FILED
MAR 13 2017
[signature] CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| MICHAEL R. DECKER, AS TRUSTEE FOR THE NEXT OF KIN OF VANNAH TYRA DECKER;<br><br>Plaintiff,<br><br>vs.<br><br>DEERFIELD HUTTERIAN BRETHREN INC., AND JANOS STAHL,<br><br>Defendants. | 1:16-CV-01008-CBK<br><br><br><br>OPINION AND ORDER |

Michael R. Decker, trustee for the next of kin of his deceased daughter, Vannah Tyra Decker, filed a complaint alleging wrongful death claims, pursuant to SDCL § 21-5-1 *et seq.*, and survival claims, pursuant to SDCL § 15-4-1 *et seq.*, against Deerfield Hutterian Brethren Inc. and Janos Stahl. These allegations arise from an automobile accident that occurred on February 9, 2014. Defendant Deerfield Hutterian Brethren Inc. has made a motion for summary judgment, asserting the plaintiff's negligence claims against Deerfield Colony fail as a matter of law.

## FACTUAL BACKGROUND

Michael R. Decker, father of Vannah Decker, is a baptized Hutterite and lives with his family at Starland Hutterian Brethren Colony in Gibbon, Minnesota. Michael and his wife, Elsie, had five children. Vannah was their second daughter and had just turned fifteen years old.

On February 9, 2014, the Decker family was visiting the children's grandparents at Plainview Colony near Leola, South Dakota. At approximately 5:30 p.m., Vannah left to eat dinner with her friend, Heidi Stahl. After dinner, Vannah and Heidi decided to go to Heidi's friend's house where several other Plainview Colony teens had gathered. Among the teens in the group was Vannah's older brother, Lyndon. Several teens from

Plainview Colony were drinking beer when Vannah and Heidi arrived. Vannah did not consume alcohol that night, but instead was more interested in meeting with Janos Stahl, a seventeen-year old Hutterite from Deerfield Colony, just four miles away.

Vannah and Janos had been secretly using their cell phones to message each other through Facebook for the past year. Deerfield Colony prohibits any use of Facebook or Facebook Messenger. So in order to communicate, Janos would have to go into town and get access to the public wireless Internet at the local library. Realizing the opportunity, Vannah messaged Janos to visit her at Plainview Colony later that night. Although they had a budding friendship, they had yet to meet in person.

Before going to church that evening, Janos went into his grandmother's house to take two Hamm's beers from her refrigerator. After his parents went to bed around 9:00 p.m., Janos grabbed the keys to the GMC Jimmy off the nail in the front closet, went outside, started the GMC Jimmy, and took off for Plainview Colony.

Janos had already consumed the Hamm's beers by the time he arrived at Plainview Colony, a drive which typically takes fifteen minutes. As Janos was driving into Plainview Colony, he messaged Vannah, and a group of Plainview Colony teens went outside to meet him. At the house, the group of Plainview Colony teens supplied Janos with a few more beers. After drinking and talking with the group, Janos and Vannah decided to tell the others they were going for a walk at approximately 10:00 p.m. to 10:30 p.m. Because it was a bitterly cold February night, they decided to sit in the GMC Jimmy with the motor running. After some time, Janos decided to drive Vannah back to Deerfield Colony.

Moments before the accident, Janos remembers driving down 125th Street, a gravel road. In an attempt to impress Vannah, Janos sped up to 97 miles per hour. As they were talking and laughing, Janos heard a loud noise. The GMC Jimmy hit the ditch, rolled several times, and broke through a barbed-wire fence. Vannah was ejected from the vehicle.

Janos regained consciousness and claims he looked for Vannah for about ten minutes with no success. Janos then walked back to Deerfield Colony in his socks. The

temperature at the time was fifteen below zero. When Janos arrived at his house, he took a shower and went to sleep. Janos failed to tell anyone about the accident that night. Vannah's body was found the next morning at the scene of the accident.

In addition to a crushed Hamm's beer can, an open bottle of Windsor Canadian Whiskey was found next to the GMC Jimmy. John Stahl believes the Windsor bottle may have been taken from the Deerfield Colony hog barn where Janos worked. Empty whiskey bottles were often used to store wine for later consumption. Alcoholic beverages were readily available in the workplace, including where minors such as Janos Stahl worked on a daily basis. There is no evidence that alcohol was kept under lock and key. For children growing up in a colony, there are two kinds of property: things under lock and key to which access is forbidden, and materials not locked up. The latter are accessible and available for use. The practice of using padlocks on the colony "is necessary to keep children from getting into everything." Ex. Z at 6. There is a widespread expectation that children will get into everything. One preacher said: "Opportunity makes thieves, and we have to keep things locked up." Id.

To the EMS workers, Janos initially told them there was no passenger in the vehicle at the time of the accident. Once the EMS workers informed Janos they knew there was at least one person with him, he told them what had happened. Janos has also testified that when he regained consciousness he believed Vannah was already at Plainview Colony.

That morning, Michael and Elsie Decker expected Vannah to be at Heidi's house. They were informed by the South Dakota Highway Patrol that Vannah had been in an automobile accident. A family friend drove Michael to the scene of the accident to identify Vannah. The South Dakota Highway Patrol concluded that Janos's excessive speed of 97 miles per hour was the cause of the accident, explaining Janos operated the vehicle in "an irresponsible and unsafe manner." Moreover, the South Dakota Highway Patrol found the weather conditions to not be a factor in causing the accident.

Janos has admitted his negligence in this case. He was charged criminally as an adult with Second Degree Manslaughter and served a one-year sentence in the Edmunds County Jail. Janos is now living with his parents at Deerfield Colony.

Defendant Deerfield Hutterian Brethren Inc., is a non-profit corporation near Ipswich, South Dakota. The purpose of the Deerfield Colony is to promote the Hutterian religious faith and church. Part of their belief system is that the church members "should live together in a farming community, without individual ownership of personal or real property." Deerfield Colony has around 125 members, and each member is prohibited from owning any real or personal property, as well as holding any rights in the corporation's property.

At the time of the accident, Deerfield Colony owned more than twenty vehicles that were used by its colony members. Solomon Stahl, Deerfield Colony's Financial Manager, has the responsibility of determining how Deerfield Colony's vehicles are utilized. The bylaws of the Deerfield Hutterian Brethren Inc. state:

> The board of directors of this corporation may lay out and define, by resolution or otherwise, rules and regulations for the practice of a communal form of living by the corporation and their dependent families, which rules and regulations should not be inconsistent with the articles of incorporation and these bylaws and shall be in conformity with the rules and regulations of the Hutterian Church.

No written instructions or restrictions are provided to a member when a colony vehicle is assigned for the member's use.

Deerfield Colony does not have a driver education or training program for its members. While Deerfield Colony does not permit its members to obtain a driver's license before the age of eighteen, there is no age requirement for boys to start driving its vehicles. Like Janos, boys at Deerfield Colony learn to drive and operate farm equipment at around the age of twelve. Janos asserts he learned how to drive by driving on his own. Solomon Stahl stated, "I think, to me, they're all self-taught." Ex. E at 31. Before the accident, Janos had driven a GMC Jimmy, a John Deere tractor, a Kubota RTV, and a

4

Chevrolet Colorado with no one else in the vehicle. Each time, the keys were readily available and he understood that he had permission to drive the vehicle without having to inform anyone.

Solomon Stahl explained that it is "common" for unlicensed boys on the colony to learn how to drive on public roads when he stated, "I'm not watching for it, and I wouldn't say anything if I would see it, but if everything is within reason, I – I approve it." Ex. E. at 32. Janos openly drove colony vehicles on the gravel driveways located within the boundaries of what is considered to be Deerfield Colony. The gravel roads adjacent to the Deerfield Colony boundaries are public roads. John Stahl, Janos's father, had let Janos drive a colony vehicle on a public road outside the boundaries of the colony before the accident. When asked if Janos had driven off Deerfield Colony one other time, he answered, "I'm not quite sure. Maybe." Ex. C at 35. More significantly, Janos stated that other young boys at Deerfield Colony are "[s]ometimes sneaking off to a different colony or something, stuff like that." Ex. C at 34.

The plaintiff, so-called trustee for the next of kin of Vannah Decker, filed the claim with the United States District Court for the District of South Dakota, Southern Division on October 23, 2015. The plaintiff brought a wrongful death and survival action against Deerfield Colony and Janos Stahl, alleging that Deerfield Colony negligently and recklessly allowed Janos access to the GMC Jimmy. Deerfield Colony has made a motion for summary judgment. (Doc. 25).

## STANDARD OF REVIEW

Fed. R. Civ. P. 56 requires the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant must support the motion with evidence admissible at trial in order to meet its initial burden of showing the absence of a genuine issue of material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), *superseded on other grounds by* Celotex Corp v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must "substantiate his allegations with enough probative evidence to support a finding in his favor by citing to

particular materials in the record which support the assertion that a fact is genuinely disputed." Roeben v. BG Excelsior Ltd. P'ship, 545 F.3d 639, 642 (8th Cir. 2008). A genuine dispute arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 206 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Court must view the admissible evidence in a light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences drawn from the evidence. Country Life Ins. Co. v. Marks, 592 F.3d 896, 898 (8th Cir. 2010). However, the scope of admissible evidence is quite finite: "Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment." Paulsen v. Ability Ins. Co., 906 F. Supp. 2d 909, 911 (D.S.D. 2012) (*quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 202 (1986)). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See* Scheerer v. Hardee's Food Systems, Inc., 16 F.3d 272, 273 (8th Cir. 1994).

## ANALYSIS

### 1. South Dakota Law Governs Substantive Issues

Subject matter jurisdiction is established by diversity of citizenship in this case. "It is, of course, well-settled that in a suit based on diversity of citizenship jurisdiction the federal courts apply federal law as to matters of procedure but the substantive law of the relevant state." Jacobs ex rel. Estate of Jacobs v. Evangelical Lutheran Good Samaritan Soc., 849 F. Supp. 2d 893, 896–97 (D.S.D. 2012) (*citing* Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 118 (1938)). "In a choice-of-law analysis for a diversity action brought in federal district court, the choice-of-law rules are substantive for *Erie* purposes, and the choice-of-law rules of the forum state are applied to determine the litigating parties' rights." Id. The forum state is "the state in which a lawsuit is filed." *Forum State*, Black's Law Dictionary (10th ed. 2014). The plaintiff initially filed this

6

lawsuit with the United States District Court for the District of South Dakota, Southern Division. Therefore, South Dakota law governs the substantive issues in this case.

## 2. Negligent Entrustment

South Dakota recognizes negligent entrustment as a valid cause of action. Estate of Trobaugh ex rel. Trobaugh v. Farmers Ins. Exch., 623 N.W.2d 497, 502 (S.D. 2001); Colonial Ins. Co. of Cal. V. Lundquist, 539 N.W.2d 871, 872 (S.D. 1995). "Negligent entrustment is an action to hold the owner of an insured motor vehicle liable for his negligence in acts arising out of the ownership of the vehicle." Id. (*quoting* Lundquist, 539 N.W.2d at 872). "An owner of a vehicle may be guilty of negligence if he permits an incompetent, inexperienced and knowingly reckless and accident prone person to drive his vehicle." Id. (*citing* Robe v. Ager, 129 N.W.2d 47, 51 (S.D. 1964)). "This doctrine applies to situations where an owner negligently permits another to drive his vehicle." Id. "Permission, either express or implied, is a prerequisite to a suit for negligent entrustment." Id.

### a. Express Permission

"To constitute express permission, the evidence must be of an affirmative character, directly and distinctly stated, clear and outspoken, and not merely implied or left to inference." Id. (*quoting* Hinton v. Indemnity Ins. Co., 175 Va. 205, 8 S.E.2d 279, 283 (1940)); American Family Ins. Group v. Howe, 584 F.Supp. 369, 372 (1984). Deerfield Colony argues Janos's use of the GMC Jimmy that night was expressly prohibited because it specifically assigned the GMC Jimmy to John Stahl. The plaintiff acknowledges there was no express permission given to Janos that would have allowed him to drive the GMC Jimmy that night. However, the plaintiff argues that Janos was also never expressly instructed to not drive any of the Deerfield Colony vehicles on public roads. The plaintiff emphasizes that Janos testified:

> Q: I want to talk to you about Exhibit 1, which is the statement that you gave to State Farm. Let's see here. On Page 2 of Exhibit 1, and this would be Line 64, you were asked, "Okay. Have you [sic] do you know what the colony rules are regarding the use of a colony

7

    vehicle by minors?" And you said, "No I don't." Do
    you see that?

A:  Yes.

Q:  And that's accurate, right?

A:  Yes.

Q:  And the next question was "Okay. Were you ever told
    that you could or could not use the vehicle on public
    roads?" And you said, "No." Do you see that?

A:  Yes.

Q:  And that's accurate, right?

A:  Yes.

  The plaintiff concedes Janos did not have express permission to drive the GMC Jimmy on public roads that night. But, the plaintiff points out that Janos was also not expressly prohibited from doing so, based on his deposition testimony and the reasonable inferences drawn therefrom. Deerfield Colony disputes this fact. In any case, there is no genuine dispute of material fact as to whether Janos had express permission to drive the GMC Jimmy on public roads that night.

  The defendant argues that because Janos was expressly prohibited from driving the GMC Jimmy on public roads, although unknown to Janos Stahl, "it precludes a finding that implied permission existed for Janos to do the opposite." The defendant supports its argument by quoting Justice Amundson's dissent, which states: "Implied permission . . . is analyzed only if there is an absence of whether the owner, or named insured, has either allowed or denied express permission to another." Estate of Trobaugh, 623 N.W.2d 497, 507 (S.D. 2001) (Amundson, J., dissenting). The majority in Trobaugh specifically rejected this notion. The Court held that despite the driver being expressly prohibited from driving the vehicle, "material issues of fact exist as to whether [the insured], in light of his knowledge of [the driver's] situation, by his own actions impliedly consented to [the driver's] use of the vehicle in making it readily accessible for

8

his use." Id. at 503. That is, even if an insured expressly prohibits a driver from driving a vehicle, it does not preclude the possibility that the insured impliedly consented to such use based on the insured's actions, course of conduct, and lack of actions. Therefore, if Janos was expressly prohibited from driving the GMC Jimmy on public roads that night, this does not tell us whether Deerfield Colony impliedly consented to such use based on its course of conduct with Janos, with alcohol, and the other unlicensed boys authorized to drive vehicles at Deerfield Colony.

**b. Implied Permission**

"To establish the existence of implied permission or consent, there must be a 'showing of a course of conduct or practice known to the owner and acquiesced in by him that would lead to an application of permission for a particular venture.' " Estate of Trobaugh ex rel. Trobaugh v. Farmers Ins. Exch., 623 N.W.2d 497, 502 (S.D. 2001) (*quoting* Western Casualty & Surety Co. v. Anderson, 273 N.W.2d 203, 205 (S.D. 1979)); *See* SDCL § 32-35-70. "An owner's failure to object to the use of a vehicle will not in and of itself be deemed consent." Id. "Implied permission arises upon consideration of such factors as the past and present conduct of the insured, relationship between the driver and the insured, and usage and practice of the parties over an extended period of time prior to the use in question." Id. "The usage and practice of the parties must be such that would indicate to a reasonable mind that the driver had the right to assume permission under the particular circumstances." Id. (*quoting* American Family Ins. Group v. Howe, 584 F.Supp. 369, 372 (1984)). When examining the nature of the relationship between the parties, "the Court must give weight to the relationship of the parties and the probabilities which that relationship would normally generate." Id. "Generally, if the relationship is one of blood or of principal and agent, weaker evidence will support a finding of permissive use." Id. (*citing* Elkinton v. California State Auto. Assn., Interstate Ins. Bur., 173 Cal.App.2d 338, 343 P.2d 396 (1959)).

This case is somewhat factually similar to *Trobaugh*. In both cases, the drivers did not have express permission to drive the vehicle, but did so nonetheless. Estate of Trobaugh ex rel. Trobaugh v. Farmers Ins. Exch., 623 N.W.2d 497, 500 (S.D. 2001).

9

Despite the lack of express permission, the drivers in both cases arguably took the vehicle on at least three occasions, including the date of the accident. Id. at 501. In each case, there was a reasonable inference from the evidence when viewing it in a light most favorable to the plaintiff that the insured was aware of the driver's use of the vehicle. Id. at 502. The driver in *Trobaugh* and Janos took the vehicle without permission from anyone. Id. at 500. In both cases, the drivers were on a joyride with no other objective but their own personal recreation. Id. Most importantly, in the Court's holding, it stated: "Thus, material issues of fact exist as to whether [the insured], in the light of his knowledge of [the driver's] situation, by his own actions impliedly consented to [the driver's] use of the vehicle in making it readily accessible for his use." Id. at 503. The keys to Deerfield Colony vehicles were always readily accessible to Janos. So was alcohol.

There is a genuine dispute of material fact as to whether Janos had implied permission to drive the GMC Jimmy on public roads when viewing the evidence in a light most favorable to the plaintiff and the reasonable inferences drawn therefrom. First, Deerfield Colony has no minimum age requirement for unlicensed boys to start driving its vehicles. Like most boys on the colony, Janos taught himself to drive by driving vehicles owned by Deerfield Colony without a driver's license or permit beginning at the age of twelve. When Janos taught himself to drive, he was not required to ask for permission or ask for the keys to any particular vehicle, as the keys were always readily available to him. Janos testified in his deposition that other members of Deerfield Colony knew that he drove colony vehicles. Solomon Stahl, Deerfield Colony's Financial Manager, testified in his deposition that it was common for unlicensed boys to learn how to drive on public gravel roads and he was not surprised when he learned Janos drove a colony vehicle on a public gravel road without a license. Janos's father had let him drive the GMC Jimmy on a public road outside the boundaries of the colony previously without a driver's license. When asked if Janos had driven off Deerfield Colony one other time, he answered, "I'm not quite sure. Maybe." Ex. C at 35. Janos was aware of other boys at Deerfield Colony taking vehicles off colony grounds by

"sometimes sneaking off to a different colony or something, stuff like that." Id. at 34. Janos had no problem getting the keys to the GMC Jimmy the night of the accident because they were hanging on a nail in the unlocked front closet of his house. There is a question of fact as to whether Janos and the rest of the unlicensed boys authorized to drive at Deerfield Colony have established a practice of driving colony vehicles on public gravel roads without permission. Moreover, there is a question of fact as to whether Deerfield Colony created an implication of permission for such conduct. Therefore, there are genuine issues of material fact as to whether Janos had implied permission to use the GMC Jimmy on the night of the accident. There is also an issue whether the defendant made alcohol readily available to Janos.

### 3. Legal Duty to Supervise and Control Deerfield Colony's Vehicles

The last issue is whether Deerfield Colony had a duty to supervise and control its vehicles. "In determining whether a duty exists, we examine whether 'a relationship exists between the parties such that the law will impose upon the defendant a legal obligation of reasonable conduct for the benefit of the plaintiff.' " First Am. Bank & Trust, N.A. v. Farmers State Bank of Canton, 756 N.W.2d 19, 26 (S.D. 2008) (*quoting* Casillas v. Schubauer, 714 N.W.2d 84, 88 (S.D. 2006)). "A duty can be created by statute or common law." Highmark Federal Credit Union v. Hunter, 814 N.W.2d 413, 415 (S.D. 2012). "Whether a duty exists depends on the relationship of the parties . . . and public policy considerations." Johnson v. Hayman & Associates, Inc., 867 N.W.2d 698, 702 (S.D. 2015). "Duty is also based upon foreseeability." First Am. Bank & Trust, N.A., 756 N.W.2d at 26. "Although foreseeability is a question of fact in some contexts, foreseeability in defining the boundaries of a duty is always a question of law." Id. (*quoting* Braun v. New Hope Twp., 646 N.W.2d 737, 740 (S.D. 2002)). "Whether a common-law duty exists depends on the foreseeability of injury." Id. (*quoting* Luke v. Deal, 692 N.W.2d 165, 170 (S.D. 2005)). "A foreseeable risk of harm is one that would be anticipated by a reasonable person." Janis v. Nash Finch Co., 780 N.W.2d 497, 503 (S.D. 2010).

Based upon the relationship of the parties, foreseeability of injury, and public policy considerations, Deerfield Colony had a duty to supervise and control its vehicles as a matter of law. First, the relationship between Deerfield Colony and its members is rather unique. Deerfield Colony is a religious non-profit corporation dedicated to communal farming where its members have no property interests. Because Janos and his father have no personal property, their only option is to use Deerfield Colony property. He was, based upon his age, a colony member. He had the same rights as other members to use colony property. The nature of the relationship between Deerfield Colony and its members raises the foreseeability of injury because it is foreseeable that members of Deerfield Colony could use colony property in such a manner that could cause injury to another person. Specifically, it is foreseeable that unlicensed boys with access to vehicles may cause injury to another person. The foreseeability of injury increases when the keys are readily accessible and alcohol is readily available. Finally, as a matter of public policy, the Court finds it is also in the public's interest for Deerfield Colony to supervise and maintain control over its vehicles. Therefore, Deerfield Colony has a duty to supervise and control its vehicles.

## ORDER

Now, therefore,

IT IS ORDERED:

1. Defendant's motion, Doc. 25, for summary judgment, pursuant to Fed. R. Civ. P. 56(a) and 56(c), is denied.

DATED this 10th day of March, 2017.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge